Burket, J.
The only question here involved is, whether or not Mr. Oliver was entitled to have Mrs. McClure interplead with Mrs. Johnston in this case.
It is contended by plaintiff in error that the bond was given under section 5545, Revised Statutes, while the defendant in error contends that the bond was given under section 5529. The result of this case would be the same whether the bond was given under one or the other of these sections ; because the giving of a bond under either section, has the effect to place the property attached into the hands of the person in whose possession it was found by the- sheriff, and prevents the attaching creditor of the security afforded by the sheriff’s possession of the property, and substitutes therefor the security afforded by the bond.
Section 5545 goes farther than section 5529, and discharges, not only the attachment, but also the liability of all garnishees.
In this case it clearly appears that Mr. Rose-burgh did not deliver the money to the sheriff, and *14 that he was garnisheed and required to answer as provided by section 5547.
Had Mr. Oliver kept out of the suit, and permitted the case to take its ordinary course, Mr. Roseburgh would have been compelled to answer under oath, and disclose whether or not he owed this money to Mrs. DeHaven. Had he denied owing it to her, the question could have been settled by Mrs. Johnston without delay, in the usual course of law.
Instead of allowing this course to be pursued, Mr. Oliver, by his interference and the giving of his bond, changed the course of the litigation, discharged the attachment and liability of the garnishee, prevented an inquiry as to the ownership of the attached money, and bound himself in the sum of $2,500, that the money should be forthcoming to answer the judgment in that action, which was, in legal effect, binding himself to pay the judgment, not exceeding the amount of his bond. Any arrangement thereafter made by Mr. Oliver, Mrs. McClure and Mr. Roseburgh, as to the money attached, could not affect the rig’hts of Mrs. J ohnston, nor the liability of Mr. Oliver on his bond. '
By some subsequent arrangement among these three parties, Mr. Oliver, Mrs. McClure and Mr. Roseburgh, the attached money was placed in the hands of Mr. Oliver, and he ever thereafter held the same; and then, when sued on his bond, he says that he cannot tell to whom the money belongs and that it is claimed by Mrs. McClure, and he asks an interpleader.
Under these circumstances Mr. Oliver is conclusively estopped, as between himself and Mrs. Johnston, from denying that Mrs. DeHaven was the owner of the money so attached; and he is *15 liable on bis bond whether she was such owner or not. Having recited in his bond that the money was attached as the property of Mrs DeHaven, and bound himself that the money should be forthcoming to answer the judgment in the action, and having thereby discharged the attachment and garnishee and obtained and held the money himself, and changed the course of the litigation, he cannot now be heard to say that this money did not belong to Mrs. DeHaven at the time of the attachment. The authorities are clear, that in all such cases, the obligor on the bond is estopped from claiming the ownership of the property to be different from what is recited in the bond. He can neither claim the ownership to be in himself nor in any third person.
In the ease of Dezell v. Odell, 3 Hill, 215, the receipt was as follows:
“Received of H. Odell, constable, one bay horse, one sorrel mare, one double wagon, one bureau and one cow, which I agree to deliver to H. Odell on the 29th day of October on the premises of Alexander Dezell, at ten o’clock in the forenoon, in the town of Lisbon.
“James Dezell.”
In an action by Odell against Dezell for the conversion of the property mentioned in this receipt, the defendant undertook to claim that he was the owner of the property. The court held that he was estopped by his receipt from claiming the ownership of the property. Cowen, J., in delivering the opinion, uses this language: “It may be conceded that, had the defendant’s claim been interposed at the time of the levy, and he had signed the receipt in terms, without prejudice to his right, the question would have been open. The creditor *16 would thus have been put upon his guard, and enabled to seek for- other property, on finding- that his debtor had no title to that in question. Indeed, here was a course of action on the part of the receiptor directly calculated to influence the conduct of the creditor in a way prejudicial to his interests, unless we hold the receiptor. The officer being-induced to part with the possession or to forebear taking- actual possession, by the receiptor recognizing his right and agreeing to take or hold for him, was itself an injury, if we now let the defenant go free. We then have a clear ease of an admission by the defendant intended to influence the conduct of the man with whom he was dealing, and actually leading him in a line of conduct which must be prejudicial to his interests, unless the defendant be cut off from the power of retraction. This I understand to be the very definition of an estoppel in pads. For the prevention of fraud, the law holds the admission to be conclusive. The principal is the same as that which prevails between landlord and tenant. The later must surrender the possession, simply because he has received it.”
In the case of Cornell v. Dakin, 38 N. Y. 253, the property levied upon by the sheriff as the goods of the defendant Dakin, was at the time of the levy claimed by a Mr. Crue. The levy was made in the presence of Crue, and entered on the back of the execution, and thereupon a receipt was written underneath the levy in the words following: “I hereby acknowledge that I have received the above described property, so levied upon by the sheriff of Rensselear county, from said sheriff, and hereby promise and undertake to return the same, and every part thereof to the sheriff, on demand, or *17 pay the above judgment, and sheriff’s fees. Dated Troy, September 19, 1859. James F. Dakin.”
In an action by the sheriff on this receipt to recover the amount of the execution, the defendant offered to prove that he was not the owner of the property named in the receipt, and that it was owned by Mr. Crue. The court held, that he was estopped by his receipt. The syllabus on this point is, as follows: “A party, giving a receipt for property seized by an officer, upon an execution or attachment, is estopped from setting up against the officer, that the property was his own, or that of any person, other than the execution or attachment debtor.”
The court, in delivering the opinion say: “And first, on his offer to show, that the property receipted for was not the property of the execution debtor, but that of the witness Crue, in whose possession it was found; and that the sheriff was informed of the fact when the levy was made. In refusing’ to admit evidence of these facts, the court was certainly sustained by the amplest authority.” (Citing Acker v. Burrall, 21 Wendell, 605, and Dezell v. Odell, 3rd Hill, 215.) In The People v. Reeder, 25 N. Y. 302, where the offer was to show, that the receiptor, at the time of the levy, and again at the time of giving the receipt, protested that the property was his, the court, by Denio, Ch. J., say: “No point is better, settled than that a party giving a receipt for property seized by an officer, upon an execution or attachment, is estopped from setting-up against the officer, that the property was his own. ”
In the case of Bursley v. Hamilton, 15 Pick 40, the receipt was in the following form:
*18 " Chatham, January 11, 1833. Then received of John Bursley the following goods and chattels, which were this day attached by said Bursley, a deputy sheriff, as the property of Isaiah Nye, of Chatham, taken at the suit of Isaac Averrell, of New Bedford, which goods and chattels I promise to deliver to said Bursley on demand, viz: consisting of broadcloths, etc. ’ ’
In an action of assumpsit upon the receipt, it was held that the receiptor was estopped from alleging that the goods were his own property. The syllabus on this point is as follows: “ Where an accountable receipt for goods attached, set forth that they were attached as the property of the debtor, but the g’oods in fact belonged to the receiptor, it was held, in an action brought by the attaching officer on such receipt, that it was not void as being given without a consideration, and that the receiptor was estopped from alleging, by way of defense, that the goods were his own property.”
The estoppel in the case of Kelly v. State, 25 Ohio St. 577, is founded on this same principle.
There is a line of cases, which hold that such receipt is not a conclusive estoppel, if the receiptor having knowledge as to the ownership informs the officer at, or before, giving the receipt, that he claims the property as his own, or that it belongs to some named third person. Blevan v. Freer, 10 Cal., 172, is the leading case in this line of authorities. But even that case would not aid the defendant in error, because he claims to have known that Mrs. McClure claimed the money attached, and yet he gave no information of that claim to the sheriff, the court or Mrs. Johnston. In the above case of Blevan v. Freer, the court *19 say: “But if he fails to make his claim known, and thus influences the Conduct of the officer, he is estopped from afterwards asserting it.”
Mr. Oliver is, therefore, estopped by his bond, and is bound to pay the judgment recovered by Mrs. Johnston against Mrs. DeHaven, without reference to any obligations or liabilities he may have incurred with Mrs. McClure after the execution of the bond. He is therefore not entitled to an interpleader, unless Mrs. McClure claims this money from or through Mrs. Johnston, by assignment or otherwise. No such claim appears in the record.
Mr. Oliver is not entitled to an interpleader for another reason. The right of interpleader under section 5016, is confined to actions upon contracts, or for the recovery of personal property, and the right exists only when a third party, without collusion with the defendant, has or makes a claim to the subject of the action, and when defendant is ready to pay or dispose of the same, as the court may direct. In this case, the subject of the action was the liability of Mr. Oliver on his bond, or in other words, the bond was the subject of the action, and this suit was brought upon the bond, and a recovery thereon was sought.
Mrs. McClure disclosed, by the answer and cross-petition which she asked leave to file, that the subject of her action against Mr. Oliver, was a claim for money had and received to her use by Mr. Oliver. Mrs. McClure neither had nor made claim to the bond, the subject of Mrs. Johnston’s action, and therefore she had no right to inter-plead in that action, and the interpleader was properly refused.
*20 The first affidavit filed by Mr. Oliver, made a prima facie caseg for interpleader, and thereupon the court ordered that Mrs. McClure be made a party and .have leave to answer. Failing to answer within rule, she came in later and presented her answer and cross-petition, and asked leave to file the same. Objection being made, and it appearing that she claimed no interest in the subject of the action — the bond — the court refused to allow her to file her answer and cross-petition. In this the court of common pleas was right.
An interpleader is allowed for the protection of a defendant who admits that he has the subject of the action, and makes no claim to it himself, and is ready and willing to pay or dispose of it as the court may direct, and says that a third party without collusion claims it. He cannot take issue with the plaintiff, and at the same time have the benefit of an interpleader. The two are inconsistent, and he must elect between them. He cannot have both. By filing his answer, the defendant in error waived and abandoned his interpleader.
For these reasons, it is clear, that the defendant in error was not entitled to an interpleader, and that the circuit court erred in reversing the judgment of the common pleas.
The judgment of the circuit court is therefore reversed, and that of the common pleas affirmed.
Judgment reversed.